### PORTAS v. GRIFFIN WHEEL CO.

(Circuit Court of Appeals, Eighth Circuit. April 1, 1908.)

#### No. 2,605.

MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS—ACT OF FOREMAN.

Plaintiff, an employé in a wheel foundry, was injured while assisting in moving a car wheel to an annealing pit, by his foreman suddenly kicking or shoving the wheel forward so that the end of the iron handle of

the buggy carrying the wheel struck plaintiff and injured his spine. The foreman had full control of the men in defendant's foundry department, with authority to hire and discharge, but there was another foreman in charge of another division of the work, and a general superintendent who represented the defendant as the head of its business at the place where the foundry was located, to whom the workmen including the foreman, looked for ultimate and final directions, and who exercised constant and active supervision over all the work and all the business done there. *Held*, that the foreman was a fellow servant, and not a vice principal, for whose negligence if any defendant was not liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv ant, §§ 486–489.

Who are servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

In Error to the Circuit Court of the United States for the District of Minnesota.

C. D. O'Brien (R. D. O'Brien, on the brief), for plaintiff in error.

Arthur M. Keith (Charles T. Thompson, Edwin K. Fairchild, Jared How, Pierce Butler, and William D. Mitchell, on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. Plaintiff, Portas, sued the defendant company for damages sustained by him while working in its foundry in St. Paul alleged to have been occasioned by negligent conduct. He charged in his complaint that one Ryan, who had supervision and control of the employés including plaintiff, was incompetent for the discharge of that duty; that he had a violent temper, and compelled employés to work with dangerous rapidity and speed; that in the performance of his duties the foreman negligently kicked a wheel which plaintiff was removing from the foundry to an annealing pit and thereby caused serious injury to plaintiff's spine. The answer was in substance a denial of the allegations of the complaint. The chief trial issue was whether Ryan was a fellow servant of plaintiff or a vice principal of defendant.

The facts disclosed by the record are substantially these: Defendant company had nine foundries or plants including that at St. Paul located in different parts of the country and used for conducting its business of manufacturing car wheels. One of the divisions of its work at St. Paul consisted of what is called the foundry department where molten metal was cast into car wheels. The wheels when cast were carried, by a running pulley suspended from an overhead rail, to annealing pits where they were covered for cooling purposes. This work of molding the wheels, removing and depositing them in the annealing pits as carried on by defendant company required the services of some forty or fifty men. Amongst them were two men whose duties were to "buggy" the wheels as it is called in the evidence, after they are raised by derricks from the molds, away to the annealing pits, which were located nearby. This process of "buggying" was performed by an employé, in this way: He caught a wheel after it had been taken from the mold and placed in the proper position, with an apparatus like ice tongs which had a shaft four or five feet long with a short

cross-bar at the end for a handle, and pulled it along behind him under the overhanging rail from which it was suspended, to its place of destination. Portas was one of these buggy men. The work of raising the hot wheel from the mold and taking it to the annealing pit required rapid action to prevent spoiling it by hasty or improper cooling and for this reason the buggy men were required to be active. Ryan was the foreman over this foundry department; and, besides having general supervision of the workmen engaged in it, a very particular and important part of his work was to see that the casting, removal, and covering of the wheels in the annealing pits were done as rapidly as possible. His duty was to exact quick action from the men, and he doubtless sometimes employed language unusual in genteel society. The evidence tends to show that in September, 1905, after Portas had attached his buggy to a wheel and had started to pull it away to the annealing pits, with his hands gripping the handle of the buggy behind his back, Ryan, in the effort to hurry on the work, suddenly kicked or shoved the wheel forward, and that the quick motion thereby given to the suspended load was imparted to the iron handle of the buggy, the end of which hit Portas in the back and injured his spine. Ryan had full control over the men in the foundry department, had authority to assign them to different branches of the work as and when necessary, and to hire and discharge them as he thought best. There was at least one other foreman who had immediate charge of another division of the work including the work done in the yard. He was called a yard foreman. Notwithstanding these facts the record conclusively shows that there was a general superintendent by the name of Maloney who represented the company as the head of its business in St. Paul. To him all the workmen including the foremen looked for ultimate and final directions, and he exercised constant and active supervision over all the work and all the business done there.

We entertain some doubt whether the allegations of the complaint sufficiently charge that the defendant company was culpably negligent in employing Ryan as a foreman or sufficiently charge that Ryan's general incompetency or ill temper was the proximate cause of plaintiff's injury; but assuming that the allegations are sufficient in both these particulars, we are of opinion that the proof utterly fails to establish the affirmative of either of them. This leaves Ryan's act of kicking or shoving the wheel which plaintiff was drawing away as the only remaining act of negligence charged against the defendant company. Whatever relation that act may have had to the injury sustained by plaintiff it appears clear that it was the act of a fellow servant for which, under well settled law, the master is not liable.

We took occasion to say in the recent case of Vilter Mfg. Co. v. Otte (C. C. A.) 157 Fed. 230, where authorities are collected, that "The fact that Wright [a foreman in charge of some work for a master] had actual control of the crew, the power to hire and discharge them and to direct their movements in that particular work did not erect that single job into a department of defendant's business and did not make him a vice principal." In that case as in this there was a general agent or superintendent who had immediate control over the foreman; and he was held to stand for the master as vice principal and the fore-

man was held to be a fellow servant only. The doctrine of that case is so conclusively warranted by the decisions of the Supreme Court as well as our court there cited that it seems unprofitable to reconsider or restate it. On their authority the action of the court below in directing a verdict for the defendant must be affirmed, and it is so ordered.